**Marceline M. DONALDSON, Plaintiff,**

v.

**The PILLSBURY COMPANY et al., Defendants.**

**No. 4–74–Civ–183.**

United States District Court, D. Minnesota, Fourth Division.

Feb. 5, 1976.

Dolores C. Orey, St. Paul, Minn., Deborah Greenburg, New York City, Percy L. Julian, Jr., Kenneth P. Casey, Daphne Webb, Madison, Wis., for plaintiff.

Thomas P. Kane, Robert Reinhart, Jr., Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, Minn., for defendant The Pillsbury Company, and William H. Spoor, L. D. Compton, Harry Funk, Henry A. Brown and C. Dean McNeal.

James C. Noonan, St. Paul, Minn., for defendant Douglas J. Dennett.

## MEMORANDUM & ORDER

DEVITT, Chief Judge.

Plaintiff, a Black female, seeks compensatory and injunctive relief from defendant corporation and six of its officers under Civil Rights laws for claimed discriminatory treatment as an employee and for wrongful discharge based on race and sex.

Jurisdiction is properly based on 42 U.S.C. § 2000e, *et seq.* and 42 U.S.C. § 1985(3). The case was tried to the court for seven nonconsecutive trial days starting on January 6, 1976. Fourteen witnesses testified and many exhibits were received. Briefs have been lodged and suggested findings of fact tendered. The court previously denied a request for class action certification.

In essence, plaintiff claims defendants discriminated against her on the basis of her race and sex by imposing discriminatory terms and conditions of employment upon her and by limiting her employment opportunities which adversely affected her status as an employee, and by discharging her in retaliation for her opposition to, and attempts to correct, discriminatory employment practices.

In essence, defendants deny discriminatory treatment or wrongful discharge of plaintiff and claim plaintiff was discharged because of poor job performance and bad work attitude.

Plaintiff worked for Pillsbury from February 1, 1972 to January 31, 1973. For about the first seven months she worked as a staff assistant in the Corporate Personnel Department with the title of Assistant Director of Manpower Planning. From early September on she worked in the Export Division of the International Operations Company as an Assistant to the Consumer Export Manager. Most of her complaints deal with her service in International.

Plaintiff, a native of Louisiana, came to Minnesota in 1961. She had extensive college training but had not earned a college degree. She had some work experience for others and for about three years conducted her own antique and interior decorating business. She was a registered representative for a stock brokerage firm for three years.

Marceline Donaldson was active in civic affairs in the Minneapolis community. She met C. Dean McNeal, a group vice-president of Pillsbury through work in the Minneapolis Urban Coalition. She called him for assistance in obtaining work at Pillsbury. He helped her by arranging through Henry Brown, Personnel Manager, for an employment interview. She said she preferred work in the International Division. There was no opening there at the time but she was hired for work in the Personnel Department. Plaintiff had no previous qualifications for the work but was to be trained for her responsibilities.

The principal specific claims of plaintiff in support of her allegations of discrimination and wrongful discharge on account of race and sex are that she did not receive adequate training or supervision in her work, was not furnished meaningful job description of the work expected of her, did not receive compensation comparable to that received by others in similar occupations in Pillsbury, was not provided office, telephone and secretarial facilities equal to other employees similarly situated, was discouraged and obstructed in her assigned work of dealing with problems of minorities and women employees, was not afforded foreign language training to qualify her for work in the International Department and was wrongfully discharged because she was a Black and a woman.

Plaintiff, by her own testimony, supported these claims. There was preponderant evidence in refutation of each of these claims and in support of defendant's position that plaintiff was fairly and equally treated and was discharged solely because of poor job performance and bad work attitude.

While employed in the Personnel Department, plaintiff was provided education, supervision and continuing instruction as to her work responsibilities by Henry Brown, her supervisor. Her responsibility was to provide assistance in the recruitment and placement of qualified female and minority employment candidates and in the identification, communication and attempted resolution of employment problems of minority and female employees. Marceline Donaldson discharged these responsibilities at the specific request and with the full approval of her supervisors, Henry Brown and Harry Funk and with the strong encouragement of Pillsbury President Keith. The discharge of these responsibilities was not curbed or curtailed by her superiors.

Plaintiff received annual compensation of $15,000 which she stated was satisfactory and was fair and reasonable relative to compensation paid fellow employees. She was provided office, telephone and secretarial arrangements which were adequate and fair in relation to similar arrangements provided fellow employees in the Personnel Department.

Plaintiff was transferred to International about September 11, 1972 at her request and her pay was increased $1,000 to $16,000 per year. This was fair compensation relative to that paid to fellow employees. By way of comparison, William Conroy, Area Sales Manager with 25 years seniority, three college degrees and command of French and Spanish, received $17,000 per year. Her title was Assistant Sales and Marketing Administrator and the position was specifically created for her and was not filled when she was discharged.

The evidence shows that plaintiff received fair and adequate supervision, training and guidance in the Export Division. She was provided understandable work direction by her superiors, including the specific assignment to serve as assistant to Consumer Export Manager Douglas Dennett and in the development of Pillsbury's cooperative marketing program. She was afforded a written job description as well as clear short-term and mid-term job assignments.

Contrary to her claim, the evidence reflects that plaintiff was provided office, telephone and secretarial arrangements which were fair relative to similar arrangements provided fellow employees in International. Certain minor delays experienced in the completion of these arrangements were not unusual. Plaintiff persisted at trial that her office arrangements were inferior to those of others of a comparable status. But the evidence is clearly to the contrary. Plaintiff's office did not have an outside window but the evidence showed that was a luxury assigned to employees only after years of service.

Shortly after Marceline Donaldson moved to the Export Division, she asked to receive educational aid from Pillsbury to learn the Spanish language through the Berlitz program. Her repeated requests were refused by her superior for good reasons, including the preference of her supervisors that she address her initial learning efforts to learning the basic fundamentals of the international marketing business with which she had no prior exposure. Her immediate supervisors, Douglas Dennett and L. D. Compton, did not speak or write the Spanish language. Familiarity with Spanish was not a requirement for her work.

The evidence is clear, practically uncontradicted, that while employed in the Export Division, plaintiff was habitually tardy in reporting for work and was frequently absent from her work place without explanation. One of her superiors, Mr. Compton, said she "was not one day on time." Her work was distracted by a disproportionate number of personal telephone calls which did not abate despite the directives of her supervisors.

Work assignments delegated to plaintiff during the course of her employment with the Export Division were performed by her in unsatisfactory and superficial fashion. For example, while her assignments included the research, planning and recommendation of corpo-

rate marketing opportunities whereby Pillsbury might utilize its existing foreign marketing organization to market new products of other domestic firms overseas, plaintiff's work in this regard failed to reflect research or planning efforts or analysis beyond the cursory idea stage.

Plaintiff persistently exhibited an insubordinate and uncooperative work attitude while employed in the Export Division. She resisted work direction from her supervisors, failed and refused to accept the necessity of learning the rudiments of international marketing, balked at attending to detail work which was critical to job performance at every level of employment in the Export Division and repeatedly engaged in contentious conduct which obstructed work efficiency within the department. It is not disputed that on November 14, 1972 plaintiff disobeyed the express direction of her superior, L. D. Compton, by devoting a full business day to participation in a program at Carleton College, Northfield, Minnesota, as a spokesman for Pillsbury, after Mr. Compton had discussed the matter at length with her and specifically refused her permission to be absent from work for this purpose. The evidence shows that plaintiff wanted to run her own show and was not amenable to suggestion or direction.

I am satisfied from all of the evidence that plaintiff was not discriminated against in any respect. On the contrary, it shows that in many respects she was afforded preferential treatment. Most of plaintiff's proof came only from plaintiff herself. She was not a credible witness. The conclusion is fully justified from the evidence that plaintiff saw bogeymen where there were none and unjustifiably attached improper motives and racial and sex overtones to many events and relationships during the year of her employment with Pillsbury. Plaintiff had the enviable opportunity to learn much and advance rapidly with her employer but her work just didn't pass muster and this, with her negative attitude and contentious disposition, fully justified her discharge.

During trial the court sustained objections to plaintiff's tender in evidence of many statistical exhibits, including Ex. 1–849, Ex. 1–850, Ex. 1–881 and Ex. 1–882 and offers of proof as to the testimony of many Pillsbury employees as being irrelevant. It still does not appear that such offered evidence is relevant but all of such statistical exhibits are now received, and even considering such exhibits and the offered evidence of the other Pillsbury employees, the court's finding and conclusion remain the same.

These expressions shall serve as the court's Findings of Fact and Conclusions of Law in response to the dictate of Federal Civil Rule 52.

The Complaint is dismissed.